**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

ANNIE PERRONE,

                 Plaintiff,

v.

CATAMOUNT SKI RESORT, LLC
and CATAMOUNT DEVELOPMENT
CORPORATION,

                 Defendants.

1:20-cv-563 (AMN/CFH)

---

**APPEARANCES:**

**LAW OFFICE OF URIEL E. GRIBETZ**
19 Court Street, Suite 201
White Plains, New York 10601
*Attorneys for Plaintiff*

**ROEMER WALLENS GOLD & MINEAUX, LLP**
13 Columbia Circle
Albany, NY 12203
*Attorneys for Defendants*

**OF COUNSEL:**

**URIEL E. GRIBETZ, ESQ.**

**MATTHEW J. KELLY, ESQ.**

**Hon. Anne M. Nardacci, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

On August 28, 2019, Plaintiff Annie Perrone ("Plaintiff") commenced this diversity action against Catamount Ski Resort, LLC ("Catamount Ski Resort") and Catamount Development Corporation ("Catamount Development"; together with Catamount Ski Resort, "Catamount" or "Defendants") alleging negligence and gross negligence in connection with injuries Plaintiff suffered while skiing at Catamount Ski Area. *See generally* Dkt. No. 1 ("Complaint"). This case is set for trial on May 13, 2024. Presently before the Court are the parties' motions *in limine* and

responses.  Dkt. Nos. 83, 90, 94, 96.[1]

For the following reasons, the Plaintiff's motion *in limine* is denied, and Defendants' motion *in limine* is denied in part and reserved in part.

## II.     STANDARD OF REVIEW

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence.  *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996); *Nat'l Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co.*, 937 F. Supp. 276, 283 (S.D.N.Y. 1996).  "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds."  *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001) (citation omitted).  "[C]ourts considering a motion *in limine* may reserve decision until trial, so that the motion is placed in the appropriate factual context."  *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 536 (E.D.N.Y. 2011) (citing *Nat'l Union Fire Ins. Co.*, 937 F. Supp. at 287).  Further, a district court's ruling on a motion *in limine* is preliminary and "subject to change when the case unfolds."  *Luce*, 469 U.S. at 41.  The moving party bears the burden of establishing that evidence is inadmissible for any purpose and so properly excluded on a motion *in limine*.  *See United States v. Pugh*, 162 F. Supp. 3d 97, 101 (E.D.N.Y. 2016).

## III.    DISCUSSION

Plaintiff and Defendants each seek to preclude or limit the testimony of the opposing party's experts.  The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence ("Rule 702").  Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509

---

[1] Citations to docket entries utilize the pagination generated by CM/ECF, the Court's electronic filing system.

U.S. 579, 588 (1993). While district courts perform a "gatekeeping role" to ensure "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand," *Daubert*, 509 U.S. at 597, "[i]t is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions." *U.S. v. Napout*, 963 F.3d 163, 187 (2d Cir. 2020) (quotation omitted).

> Rule 702 states:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.[2]

The Second Circuit has interpreted Rule 702 to require the district court to first determine whether a proposed expert is qualified to provide an opinion, before assessing the reliability and relevance of the expert's proffered testimony. *See, e.g.*, *Vale v. U.S.*, 673 Fed. App'x 114, 116 (2d Cir. 2016) (summary order) ("As a threshold matter, trial courts must consider whether the witness is qualified . . . before reaching an analysis of the testimony itself."); *Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005) ("[A]fter determining that a witness is qualified as an expert to testify as to a particular matter . . . and that the opinion is based upon reliable data and methodology, Rule 702 requires the district court to make a third inquiry: whether the expert's testimony (as to a particular matter) will assist the trier of fact.") (quotations and citation omitted).

---

[2] Rule 702 was amended effective December 1, 2023. The amended Rule now requires courts to determine that "it is more likely than not" that the four factors are satisfied before allowing an expert witness to testify. Fed. R. Evid. 702.

A.     **Plaintiff's Motion *in Limine***

1.     **Irving Scher, Ph.D.**

Plaintiff seeks to preclude Defendants' biomechanical engineering expert, Irving Scher, Ph.D., "from testifying at trial in regard to the causation of [P]laintiff's injuries." *See generally* Dkt. No. 90.³  Plaintiff contends that Dr. Scher is "not a medical doctor" and does not have "the educational background or training" to provide an opinion as to the medical causation of Plaintiff's pelvic fracture sustained in the ski accident. Dkt. No. 90 at 1-3 (citing, *inter alia*, *Gates v. Longden*, 120 A.D.3d 980, 981 (4th Dep't 2014)) ("[D]efendants' biomechanical expert is an engineer, and is not a medical doctor, and thus the court properly determined that the expert did not possess the requisite skill, training, education, knowledge or experience from which it can be assumed that the information imparted or the opinion rendered regarding injury causation is reliable.") (quotation omitted).

Defendants assert that Dr. Scher will not testify as to Plaintiff's medical injuries, and that he relied on the review of a board-certified radiologist to identify and confirm the injuries Plaintiff sustained to her pelvis. Dkt. No. 96 at 9-10.  However, Defendants contend that Dr. Scher "should be permitted to testify as to the issues surrounding general causation and the forces sustained by a person of Plaintiff's height and mass in a skier collision with a fixed object, including the likelihood that typical ski-area padding would alter the forces such skier would experience." *Id.*

---

³ Specifically, Plaintiff seeks to exclude Dr. Scher's testimony that "to a reasonable degree of biomechanical engineering certainty, it is highly unlikely that typical ski area padding would prevent pelvic injuries for an individual of [Plaintiff's] size and mass contacting the subject snow making equipment at or near typical non-beginner skier speeds on a trail similar to Colonel Capers." Dkt. No. 90 at 1. Defendants further seek to have Dr. Scher testify that "[t]ypical [ski] area padding used on off trail objects would not have altered the outcome of Ms. Perrone's accident; commercially available ski area padding would be unlikely to lessen significantly the severity of her injuries." *Id.* (citing Dkt. No. 58-21 at 25).

4

at 3-4.

While "[a] biomechanical engineer without a medical degree or training is . . . generally not allowed to testify regarding whether a specific accident caused or contributed to a plaintiff's injuries . . . . [c]ourts in the Second Circuit typically allow biomechanical engineers to testify only to general causation, i.e., whether the force sustained by a plaintiff in the subject accident could potentially cause certain injuries." *Grajeda*, *v. Vail Resorts Inc.*, No. 2:20-CV-00165, 2023 WL 4803755, at *11 (D. Vt. July 27, 2023) (quotation marks and citations omitted); *see also Nicolas v. ABF Freight Sys.*, No. 19-CV-06513 (HG) (JAM), 2024 WL 915179, at *2 (E.D.N.Y. Jan. 24, 2024) ("It is well settled that biomechanical experts are permitted to opine as to general causation of injuries.").

Moreover, courts have found Dr. Scher qualified to testify regarding general causation, including the efficacy of whether commercially available padding on an object a plaintiff collided with while downhill skiing could have prevented or reduced the severity of a plaintiff's injury. For example, in *Madsen v Catamount Dev. Corp.*, Index No. 157038/2015 (Sup. Ct. N.Y. Co.), Dr. Scher testified at trial as to whether commercially available padding would have prevented or reduced the injury of an infant who collided while downhill skiing with an unpadded metal snow gun. *See Zhou v. Tuxedo Ridge, LLC*, Index No. 709709/2021, NYSEF Doc. No. 82 at 1-3 (Sup. Ct. Queens Co. Sep. 12, 2022) (citing *Madsen* Expert Witness Disclosure of Dr. Scher). On appeal in *Madsen*, the First Department affirmed the verdict in favor of the defendant and found that a jury "could have concluded that padding the pole which the infant plaintiff struck at the time of her accident would not have prevented or reduced her injuries," and that Dr. Scher's testimony "was not speculative." *Madsen v. Catamount Dev. Corp.*, 188 A.D.3d 423, 424 (1st Dep't 2020); *see also Grajeda*, 2023 WL 4803755, at *2, *11-12, *20 (summarizing Dr. Scher's qualifications

5

in biomechanical engineering and permitting Dr. Scher to testify regarding "general causation" of a plaintiff's injury who collided with a snowmaking station's metal pole while downhill skiing, including whether at certain speeds, padding would have prevented significant injuries); *Zhou*, Index No. 709709/2021, NYSEF Doc. No. 122 at 3 (Oct. 7, 2022) (noting that Dr. Scher's "extensive background renders him an expert in his field [of biomechanics] and capable of testifying as to the mechanics of injury").

Plaintiff further contends that because Dr. Scher never went to the accident site, he should not be able to testify that "[a] non-beginner skier should be able to stop or change direction to avoid open, obvious, visible, and marked snow making (or other obstacles) that are 135 feet away." Dkt. No. 90 at 2 (citing Dkt. No. 58-21 at 19). Defendants respond that Dr. Scher has a factual basis for his opinion as he attended a virtual trail inspection, on a video call, at Catamount Ski Area with Defendants' expert ski witness, Mark Petrozzi. Dkt. No. 96 at 11 (citing Dkt. No. 96-3 at 10).

The fact that Dr. Scher did not personally visit the site of the accident does not, by itself, make his testimony unreliable. *See, e.g.*, *Thomas v. YRC Inc.,* No. 16-CIV-6105 (AT) (HBP), 2018 WL 919998, at *6 (S.D.N.Y. Feb. 14, 2018) (noting that the fact a biomechanical engineering expert did not visit the accident scene did not render his opinion unreliable because the expert "based his opinion on 26 separate documents relating to [the] litigation, including photographs of the accident location"); *Morgan v. Girgis*, No. 07 CIV. 1960 (WCC), 2008 WL 2115250, at *4 (S.D.N.Y. May 16, 2008) (finding plaintiff's argument that a biomechanical engineering expert's opinion is unreliable because the expert did not visit the scene of the accident, inspect the damaged vehicles, or view photographs of defendant's vehicle, was without merit).

Therefore, the Court finds that Dr. Scher may provide an opinion regarding general

causation. However, Defendants must lay a proper foundation for his testimony, including the methods he employed to establish his opinions and any factual bases for his opinions. Plaintiff may question Dr. Scher on the methods he used and the facts supporting his opinions on cross-examination. Accordingly, Plaintiff's motion *in limine* to preclude Dr. Scher's testimony is denied.[4]

**B.     Defendants' Motion *in Limine***

Defendants seek to: (1) limit the testimony of Plaintiff's testifying doctor, Thomas S. Eagan, M.D., and (2) preclude or limit the testimony of Plaintiff's snow sports expert, Stanley Gale. *See generally* Dkt. No. 83.

**1.     Thomas S. Eagan, M.D.**

Defendants contend that Plaintiff was treated by "a number of orthopedists following her injury," however, Plaintiff is only calling Dr. Eagan, a "regular courtroom witness," whose office is over 150 miles from Plaintiff's residence, to testify. Dkt. No. 83 at 6. Defendants rely on several cases for the proposition that "a non-treating physician, hired only to testify as an expert witness, may not state the history of an accident as related to him by the plaintiff or testify as to plaintiff's medical complaints . . . nor can the expert summarize and read statements and findings contained

---

[4] Plaintiff also asserts that Dr. Scher is "incorrect in assuming [Plaintiff] was a non-beginner skier skiing on a non-beginner trail." Dkt. No. 90 at 4; *see* Dkt. No. 64-13 at 12 (noting that even though Plaintiff testified that she had skied "pretty frequently," Plaintiff also testified that she "felt the need to take a lesson prior to skiing the regular slopes because she had not skied in a couple of years," and she "would not classify herself as any level skier") (citing Dkt. No. 58-7 at 47:5-9; 49:16-50:1; 53:7-54:4). Defendants assert that Dr. Scher's report states that she was skiing on Colonel's Caper, a beginner trail, and Plaintiff's and her father's deposition testimony indicate that she was a "non-beginner" skier. *See* Dkt. No. 96-2 at 12-13 (noting that Plaintiff testified she had "skied pretty frequently before" and Carlos Perrone, Plaintiff's father, testified that Plaintiff's skill was somewhere "between beginner and intermediate") (citing Dkt. No. 58-7 at 47:5-9; Dkt. No. 58-8 at 9:16-21). The Court finds that Dr. Scher's opinion is not unreliable on this basis. Plaintiff may question Dr. Scher as to Plaintiff's skill level on cross-examination.

in the reports and records of plaintiff's treating physicians, where reports and records were not in evidence and treating physicians did not testify at trial." *Id.* at 6-9 (quoting *Hall v. Holiday Mountain Fun Park, Inc.,* No. 0013342015, 2017 WL 7788834, at *2 (Sup. Ct. Sullivan Co. May 19, 2017) (citing *Nissen v. Rubin*, 121 A.D.2d 320, 322 (1st Dep't 1986); *Adkins v. Queens Van-Plan, Inc.*, 293 A.D.2d 503, 503 (2d Dep't 2002); and *Easley v. City of New York*, 189 A.D.2d 599, 600 (1st Dep't 1993)).

In response, Plaintiff argues that Dr. Eagan's opinion is not relying on hearsay, because he "conducted a physical examination of [P]laintiff" and his opinion is based on the review of Plaintiff's medical records.  *See* Dkt. No. 94 at 2 (citing Dkt. 94-1 at 3, 6-11) (Plaintiff's Supplemental Expert Disclosure noting that Dr. Eagan is expected to testify based on his independent medical examination of Plaintiff and review of all of the medical records, including X-rays and MRI films, and listing the medical records he reviewed).[5]  Plaintiff therefore argues that the cases Defendants rely on are inapposite. Dkt. No. 94 at 3 (distinguishing *Nissen* and citing *Singh v. Catamount Dev. Corp.*, 21 A.D.3d 824, 825-26 (1st Dep't 2005) (plaintiff's orthopedic expert's testimony was properly received in evidence because it was based on a "review of the medical reports, x-rays, CAT scans and other diagnostic tests admitted into evidence")).

"It is well settled that a non-examining physician is competent to testify as a medical expert in a civil . . . trial as to the cause of a particular medical condition based upon, for example, inspection of the patient's medical records or the expert's interpretation of diagnostic tools such as X rays and MRI films." *Meyer v. Bd. of Trustees of the New York City Fire Dep't, Art. 1-B Pension Fund by Safir*, 90 N.Y.2d 139, 146 (1997).  Here, the Court finds that Dr. Eagan may

---

[5] Plaintiff also notes that Plaintiff's medical records were subpoenaed from "Columbia Memorial Hospital, Albany Medical Center, Yale Orthopedics and Rehabilitation, and Mount Sinai Hospital," and Dr. Eagan reviewed the treating physicians' notes. Dkt. No. 94 at 2.

testify based on his examination of Plaintiff and the medical records he relied on in forming his opinion which are admitted into evidence, as long as he lays the proper foundation. Accordingly, Defendants' motion *in limine* is denied on this basis.

Defendants next argue that there is "no evidentiary foundation" in the medical records for Dr. Eagan's opinions that: (1) Plaintiff "suffered a torn labrum of the right hip"; (2) Plaintiff will "more likely than not develop arthritis of the right hip and require a hip replacement during her lifetime"; and (3) Plaintiff "is not able to perform heavy labor or place excessive loads on her injured pelvis." Dkt. No. 83 at 9-10.[6] Plaintiff contends that Defendants' arguments "are more appropriate for cross examination" of Dr. Eagan at trial rather than precluding his testimony. Dkt. No. 94 at 2. The Court agrees with Plaintiff. Accordingly, Defendants' motion *in limine* is denied without prejudice to renewal at trial.

Defendants also assert that Dr. Eagan is not qualified to testify based on his diagnostic tests "whether or not there is symptom magnification" by Plaintiff because this falls under the purview of a psychologist. Dkt. No. 83 at 9. The Court finds that Dr. Eagan is qualified to testify as to the causal relationship between Plaintiff's complaints and her reported injury, as long as he lays a proper foundation. *See* Dkt. No. 94-1 at 20. Accordingly, Defendants' motion *in limine* as to this aspect of Dr. Eagan's testimony is denied.

Finally, Defendants argue that Dr. Eagan's opinion that Plaintiff "will require cesarean section for delivery of any children" should be precluded because "there is no evidentiary basis." Dkt. No. 83 at 10. The Court disagrees and finds that Defendants' challenge is an appropriate

---

[6] Defendants cite to Plaintiff's September 14, 2019 MRI at Mount Sinai Hospital stating "the labrum is intact" and a November 27, 2019 medical record from Dr. Michael Baumgaertner noting that Plaintiff's "pelvic fracture had solidly healed and should not lead to long-term problems." Dkt. No. 83 at 9-10 (citing Dkt. No. 83-1 at 3, 5).

9

subject for cross-examination.  Defendants further argue that Dr. Eagan's opinion regarding whether Plaintiff will require a cesarian section for delivery of any children is cumulative of Plaintiff's OB/GYN witness, Dr. Garafolo.  *Id*.  The Court does not have sufficient information regarding Dr. Garafolo's testimony to determine whether Dr. Eagan's testimony would be cumulative.  Accordingly, the Court reserves decision on Defendants' motion *in limine* as to this aspect of Dr. Eagan's testimony until trial.

## 2. Stanley Gale

Defendants first argue that Mr. Gale is not qualified to give expert testimony because he does not "have the levels of knowledge, experience, or skill in the area of accident reconstruction or ski area operations" necessary to provide an expert opinion.  Dkt. No. 83 at 11-13[7] (citing, *inter alia*, *Smith v. M.V. Woods Constr. Co.*, 309 A.D.2d 1155, 1156 (4th Dep't 2003)) ("An expert witness must possess the requisite skill, training, knowledge or experience to ensure that an opinion rendered is reliable.").  Therefore, Defendants assert that his opinions are "speculative and conclusory."  Dkt. No. 83 at 14.  Plaintiff responds that Mr. Gale has extensive experience testifying as a ski safety expert.  Dkt. No. 94 at 3-4 (citing Mr. Gale's extensive experience as a ski safety expert); *see also* Dkt. No. 64-5 at 34-36 (Mr. Gale's expert report noting his extensive experience as a ski safety expert, including 55 years of training in snow sports safety, working as a ski patroller for "nearly 40 years," skiing and inspecting "thousands of ski trails in approximately 400 ski areas," and "responding to collisions and other injury producing events" as part of his membership in the National Ski Patrol).

---

[7] Specifically, Defendants assert that Mr. Gale: "(1) [has] never been employed in the area of ski operations; (2) has no training or experience in managing a ski area; (3) has no qualification to provide a medical opinion; (4) has no qualification to provide an accident reconstruction opinion; and (5) [has] no qualification to provide engineering design recommendations."  Dkt. No. 83 at 11.

"In certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony." *Rich v. Tee Bar Corp.*, No. 1:10-CV-1371 (MAD/CFH), 2013 WL 5442277, at *5 (N.D.N.Y. Sept. 27, 2013) (quoting Rule 702 Advisory Committee Notes, 2000 Amendments); *see also Arista Recs. LLC v. Lime Grp. LLC*, No. 06-CV-5936 (KMW), 2011 WL 1674796, at *2 (S.D.N.Y. May 2, 2011) ("A witness may be qualified based on any one or more of the qualities listed in Rule 702—knowledge, skill, *experience*, training or education") (emphasis added). Here, the Court finds that Mr. Gale is qualified to testify as to the customs and practices of the ski industry, including safety standards and practices. *See Zhou,* Index No. 709709/2021, NYSEF Doc. No. 124 at 2 (Oct. 11, 2022) (finding that Mr. Gale was "qualified to testify as an expert witness regarding the long-standing customs and practices of the ski industry" and that the defendants could cross-examine Mr. Gale on his expertise); *see also Lipton v. Mountain Creek Resort, Inc.,* No. CV-134866 (KM) (MAH), 2019 WL 4597205, at *3, *7 (D.N.J. Sept. 23, 2019) (finding that a liability expert who had "over thirty years of experience working in the ski industry as a ski patrol director, ski patroller, and director of skier services" was qualified "to offer opinions, including opinions on industry standards of care and safety standards").

Defendants next argue that Mr. Gale should be precluded from testifying that the snow gun was not marked, and his expert disclosure that the snow gun was not marked should be stricken. Dkt. No. 83 at 14-15. Defendants contend that photographs obtained from Plaintiff after Magistrate Judge Hummel's January 12, 2023 Order (the "January Order"),[8] show that an orange lollipop marked the snow gun with which Plaintiff collided. *Id.* at 14. Defendants assert that because Mr. Gale previously gave testimony that "properly placed Catamount lollipops [marking

---

[8] In the January Order, Magistrate Judge Hummel ordered Plaintiff's counsel "to provide to defense counsel copies of any photographs that depict the conditions of the snow on the date of the accident and any metadata obtainable for those photographs." Dkt. No. 62.

11

snow guns] . . . met the State Code," *see* Dkt. No. 83-4, Mr. Gale should be precluded from testifying that the snow gun was unmarked. *Id.* at 14-15. The Court will allow Mr. Gale to testify as to whether the snow gun Plaintiff collided with was properly marked on the day of Plaintiff's accident. However, Plaintiff must lay a proper foundation for Mr. Gale's opinion. On cross-examination, Defendants may question Mr. Gale regarding the photographs disclosed in accordance with the January Order.

Defendants further argue that Mr. Gale should be precluded from suggesting that Catamount "padded snow guns . . . on all trails at all times," because Mr. Gale's photographs, which show that Catamount previously padded poles, were taken on "a day at Catamount when there was racing on upper-level trails." Dkt. No. 83 at 15 (citing Dkt. No. 83-5). The Court will allow Mr. Gale to testify regarding whether Catamount padded snow guns in the past. However, Plaintiff must lay a proper foundation for Mr. Gale's opinions and any photographs they seek to introduce. Defendants may question Mr. Gale on cross-examination regarding the racing event on the day the photographs were taken.

Additionally, Defendants argue that Mr. Gale should be precluded from testifying that Catamount should have padded the snow gun with which Plaintiff collided because Mr. Gale admitted in another case that he "has no expertise in padding and what injuries it would avoid and what injuries it could not avoid." Dkt. No. 83 at 15 (citing Dkt. No. 83-4 at 5) (Mr. Gale testifying that he is unable to "do a calculation that would establish whether certain types of padding would prevent certain injuries"). Mr. Gale has extensive experience as a ski safety expert, and, as noted above, he may testify, based on his experience, as to the customs and practices in the ski-industry. This may include practices related to padding a snow gun located on a ski trail. *See Madsen*, Index No. 157038/2015, NYSEF Doc. No. 99 at 1-2 (May 23, 2019) (allowing plaintiff's ski-safety

expert to testify based on his "long observation and actual experience" on the "issue of whether industry standards and best practices require a snow-gun pole situated on a ski trail, or where people are likely to be skiing, [to] be padded"); *Schechter v. 3320 Holding LLC*, 64 A.D.3d 446, 450 (1st Dep't 2009) (noting that an expert may be qualified without specialized training "through long observation and actual experience") (quotation omitted).

However, Mr. Gale must testify based on his personal knowledge, and he must explain how his personal experience leads to his conclusions. *See Grajeda, v. Vail Resorts Inc.*, No. 2:20-CV-00165, 2023 WL 2613543, at *4 (D. Vt. Mar. 23, 2023) ("If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.") (quoting Advisory Committee Notes, 2000 Amendments, Fed. R. Evid. 702); *see also Arista Recs. LLC*, 2011 WL 1674796, at *2 ("The court must ensure that the expert will actually be testifying on issues or subject matters within his or her area of expertise.") (quotation omitted).[9]

Finally, Defendants contend that Mr. Gale should be precluded from testifying that a ski trail "is not limited to the groomed surface" because he previously testified "on multiple occasions that there is a difference between grooming beginner and expert trails." Dkt. No. 83 at 16 (citing Dkt. No. 83-6 at 4-5 (opining that advanced skiers "may prefer to ski in the ungroomed portion of the trail" and "[b]eginner and intermediate skiers often look for and seek out groomed trails")). The Court finds that Mr. Gale's previous testimony is insufficient to preclude him from testifying

---

[9] The Court notes, however, that Mr. Gale is not a physician, and therefore, he would not be qualified to testify as to the cause of Plaintiff's injuries. *See Grajeda*, 2023 WL 2613543, at *5 (finding that testimony of a ski safety expert was mere conjecture as to causation of a ski accident because the expert was not a doctor, and based his opinion on a review of discovery documents).

whether a ski trail is limited to the groomed surface. Accordingly, Defendants' motion *in limine* to preclude or limit Mr. Gale's testimony is denied.

## IV. CONCLUSION

Accordingly, the Court hereby

**ORDERS** that Plaintiff's motion *in limine*, Dkt. No. 90, is **DENIED;** and the Court further

**ORDERS** that Defendants' motion *in limine*, Dkt. No. 83, is **DENIED in part and RESERVED in part;** and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 9, 2024
Albany, New York

*/s/ Anne M. Nardacci*
Anne M. Nardacci
U.S. District Judge